E-FILED
Thursday, 30 December, 2010 09:01:09 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

FRANKLIN TAYLOR,
    Plaintiff,

v.                                                           08-3289

TERESA CASTEEL et al.,
    Defendants.

## Case Management Order and Summary Judgment

The plaintiff pursues a First Amendment claim arising from the confiscation of his legal ad seeking legal representation. The ad contained a photo of the plaintiff with the background altered. The defendants have moved for summary judgment, which is granted for the reasons below.

## Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

## Facts

The events occurred while the plaintiff was incarcerated at Graham Correctional Center in late 2006, early 2007. He is currently incarcerated in Menard Correctional Center.

The plaintiff sent a written legal ad seeking legal representation for his wrongful

conviction, along with $40.95, to an organization called Friends Beyond The Wall, Inc., for posting on the organization's website. The plaintiff's original ad had no picture of him, and the plaintiff did not provide any picture of himself to Friends Beyond The Wall, Inc.. However, the organization "photo-shopped" a picture of the plaintiff into the ad, changing the background of the picture. (d/e 93-1). The court cannot tell from the photo in the record what the changed background is, but apparently it was substituted for the original background for appearance's sake. The plaintiff surmises that the organization downloaded the picture from the IDOC's website. The plaintiff's ad, with the picture, was posted on the organization's website. The organization also returned a copy of the ad (with the picture on it) to the plaintiff. The ad passed the mailroom's inspection and was delivered to the plaintiff.

Defendant Casteel worked as Graham's librarian during the relevant time. In late December, 2006, after receiving a copy of his ad from Friends Beyond the Wall, the plaintiff took the ad to the library and asked Casteel to make copies of it. He intended to send the ad to law firms in an effort to obtain legal representation for his wrongful conviction claims. Casteel did provide the copies, though she avers that she had misgivings at the time about the photograph on the ad. Soon after, Casteel came to the conclusion that the ads were contraband because they contained a photo of the plaintiff with an altered background. Casteel asserts that she asked someone in internal affairs if altered photographs were considered contraband and was told that they were. The plaintiff disputes that Casteel ever consulted anyone in internal affairs. He believes that she acted on her own out of retaliation or dislike for him. The dispute is immaterial.

On January 3, 2007, the plaintiff approached the circulation desk in the library, in order to ask for a reference book. Casteel directed the plaintiff to hand over the papers he was carrying, and she rifled through them and confiscated all of the copies of the ads.[1] That day she wrote the plaintiff a disciplinary report for insolence, unauthorized contraband, abuse of privileges, disobeying a direct order, and intimidation/threats. She wrote:

> . . . when offender . . . approached the circulation desk, this library associate asked to see his papers. I knew this offender was in possession of what I considered, at this time, to be unauthorized contraband. While I had his papers in my hand, pulling out 2 sheets of paper/letters written by "Friends beyond the wall" . . . This letter had offender Taylor's IDOC photo on it with the background of this photo altered. When this library associate . . . pulled these papers out, Offender Taylor grabbed for these papers. When he came at me, I stepped back from him. The circulation desk was between us, which stopped him from proceeding. He did not succeed in taking the papers from my hands. This offender was aggressive in nature and action. Taylor yelled I could not take them from him, they were his, he paid for them. He was asked to leave the library. . . .

---

[1]According to one version by Casteel, the plaintiff approached the circulation desk and asked for more copies of the ad, but the plaintiff's version governs at this stage.

2

(d/e 93-1, p. 21-22).

The Adjustment Committee, composed of Defendants Lipe and Andries, found the plaintiff not guilty of disobeying a direct order. However, they found the plaintiff guilty of intimidation/threats, abuse of privileges, contraband/unauthorized property, and insolence. The basis for their decision, though, did not discuss the contraband charge:

> Based on reporting employee's statement that inmate was in the library and inmate came up to the desk to have copies made. When she looked at the papers and two letters from "Friends beyond the wall.com" with his picture on it and his background. Then inmate attempted to pulled [sic] the papers out [of] her hand in an aggressive manner. Inmate admitted to the committee that he had paid for the material and it was a natural reaction to grab his papers back. Committee feels that if inmate stays at Graham that the librarian would not feel safe. Seg time 1/3 to 2/3/2007.

(d/e 93-2, p. 36). The Committee recommended a disciplinary transfer, a two-month grade demotion and library restriction, and one month of segregation. Defendant Warden Bryant approved the recommendations, and the findings were upheld on appeal by Defendant Miller.

When the plaintiff notified Friends Beyond the Walls, Inc., of the problems he had experienced, the organization sent him a letter offering to verify that the photo was the organization's doing, stating in part:

> We were very dismayed to learn that the change of your photo's background, as initiated by our staff without your request, has caused you difficulties. In seven (7) years of being in business, and with over 2,500 customers (prisoners) located in 46 states, we have never previously received feedback from any of our customers that changing a photo's background in their personal or legal ad was not allowed by their facility.
>
> Our company offers a Composite Magic Photo service on our web site, because our staff are Photoshop experts so we try and provide the best service possible to our customers. Web site visitors clearly know that many of the backgrounds in the photos have been changed, as this is mentioned throughout our website. This service has been used to enhance a photo; never with the intention to deceive the outside public. . . .

(d/e 93-1, p. 33). The plaintiff does not dispute that Friends Beyond the Wall, Inc., later sent him a copy of the ad without the photo on it.

## Analysis

The plaintiff's assertion that the ad was "legally privileged mail" is a nonstarter. Legal

3

mail includes mail from or to an inmate's attorney regarding current or prospective representation, not a legal ad that is posted on the internet for all to see. *See Guarjardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010).

The plaintiff next argues that the ad was not contraband and therefore it could not be confiscated, and he could not be punished for having it. The offense of "contraband or unauthorized property" is defined in the administrative regulations as:

> Possessing, giving, loaning, receiving, or using property that an offender has no authorization to have or to receive and that was not issued to the individual through regular procedures, including the unauthorized possession of food or clothing or the possession of property in excess of that what is authorized by the facility; or property that has been altered from its original state.

(d/e 93-1, p. 26).

The plaintiff does not dispute the averment of an Internal Affairs officer that "a photograph that has been altered from its original state may present a safety and security concern within the institution. The safety and security concern is presented because the offender may use the altered photograph for purposes of making a false identification or even conceal identity." (d/e 91-4, p. 1, Thompson Aff. ¶ 4). Thus, the prison's general rule that a photograph altered from its original state is considered contraband and a security risk is not under attack here.

What the plaintiff disputes is the rule *as applied* to his legal ad. He argues that the ad with the photo could not reasonably be considered a photograph altered from its original state.

The court does see the plaintiff's point. Casteel may have exercised poor judgment in determining that the photo was contraband that she should confiscate. True, the photo was "altered from its original state," but only the background was altered, not the plaintiff's face or body. Additionally, the photograph was a black and white copy of poor quality. It is not possible to even tell what the background is from the photo in this record. The court highly doubts that anyone could use this photocopy of a photo to fashion a false identification card or to conceal an identity. Moreover, the legal ad with the picture had already been processed through the mail room and given to the plaintiff, which suggests that the plaintiff had already received implicit approval to have it. Further, there is no indication that the plaintiff had any idea that the legal ad with the photo might be considered contraband.

Yet, constitutional violations do not spring from poor judgment. Here, it cannot be said that Casteel's confiscation of the ad violated the plaintiff's First Amendment rights. He does not deny that he was able to post the ad, with the picture, on the website. He also does not dispute that he was allowed to have the ad without the picture, and that he could have circulated that version to outside law firms. He also could have possessed the ad if the photo's background had not been changed. In short, there was no appreciable hindrance of the plaintiff's First Amendment rights by not allowing him to have the ad with the altered photo background. The

plaintiff had several viable alternatives to circulate his legal ad without the altered photo. *See Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987).

For these same reasons, the plaintiff's punishment for having contraband and the other offenses did not violate the plaintiff's First Amendment rights. Additionally, it is clear that the primary reason that the plaintiff was found guilty was not because he possessed the ad, but because of his alleged aggressive and intimidating behavior toward Casteel. He does not dispute that he argued with her and tried to grab the papers back from her. A natural reaction, perhaps, but not allowed in the prison setting. The plaintiff could have walked away and filed a grievance for the return of his ads. The plaintiff asserts that he did not intimidate or threaten Casteel, but that is not the point. The point is that the prison administrators have a legitimate penological interest in protecting staff from what *the staff* perceives as threatening and intimidating behavior. Thus, even if the punishment somehow touched on the plaintiff's First Amendment rights, it was reasonably related to the prison's legitimate penological concerns of ensuring that the staff feels safe. *See Turner v. Safley*, 482 U.S.78, 89, 107 S.Ct. 2254, 2261 (1987)(regulation impinging on First Amendment right "is valid if it is reasonably related to legitimate penological interests.").

IT IS THEREFORE ORDERED:

1) The defendants' motion for summary judgment is granted (d/e 91). The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff. All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.

2) If the plaintiff wishes to appeal this judgment, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

Entered this 30th Day of December, 2010.

\s\**Harold A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE